**John Harvey LOMAN, Jr., Plaintiff,**

and

**Kansas City, Missouri, a Municipal Corporation, Appellant and Intervenor,**

**v.**

**Donald Ray HARRELSON, Respondent.**

**No. 25017.**

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1969.

Herbert C. Hoffman, City Counselor, Jack R. Reed, Asst. City Counselor, Kansas City, for appellant.

David R. Odegard, James, McCanse & Larison, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal from the order of the court below sustaining the motion of defendant, Donald Ray Harrelson, to dismiss Kansas City's petition for intervention.

John Harvey Loman, Jr., plaintiff, was the driver of an automobile owned by appellant, the City of Kansas City, Missouri, which was involved in an accident with a truck driven by defendant Donald Ray Harrelson, on July 19, 1963. Loman, a city employee was injured in the accident. The accident was within the line of duty and arose out of and in the course of Loman's employment with appellant. Loman was hospitalized for surgery involving an operation on his right knee injured in the accident. As a result of his hospitalization, surgery and convalescence, Loman was unable to work from July 30, 1963, until November 11, 1963.

During Loman's absence, appellant paid his full salary totaling $1243.08. Appellant also paid certain medical expenses for Loman, necessary because of his injuries, in the total amount of $405.

Authority for payment of Loman's salary while off duty because of injury and for payment of his medical expenses was provided by the Kansas City, Missouri Administrative Code, 1956 revision, then in effect. Article XXV, Division 3, sections 295 through 306, inclusive, of the Administrative Code related to compensation of employees for injury. These sections remain in force but were renumbered by revision effective October 23, 1967, and now comprise Kansas City Administrative Code, Article IX, Division 4, sections A9.58 through A9.70, inclusive. These provisions were originally enacted July 16, 1954, by Kansas City, Missouri Ordinance No. 18024. Certain minor amendments have from time to time been made by ordinance, but the relevant portions remain unchanged. The ordinance provides generally for continuance of employee's salary for a period up to one year following date of injury and for payment of certain medical expenses not covered by insurance.

On November 4, 1966, plaintiff Loman commenced an action for damages for personal injuries by filing a petition for damages naming Donald Ray Harrelson, et al., as defendants. In the petition Loman generally alleged the factual circumstances of a vehicular accident; Harrelson's negligence and his injuries and damages. Loman alleged also that he was caused to expend money for his medical expenses and that he lost earnings by losing time from his employment.

On August 25, 1967, appellant filed a motion to intervene as a plaintiff. On August 28, 1967, the court entered an order granting appellant leave to intervene and to file its petition in intervention.

On October 2, 1967, the trial court granted Kansas City leave to file a second amended petition in intervention which, at defendant Harrelson's option, was to be subject to an existing motion to dismiss. The second amended petition in intervention alleged generally the facts of Loman's employment by the City, Harrelson's employment by defendant Apex Fast Freight, Inc., the corporate status of Apex Fast Freight, Inc., the factual circumstances of the accident, Harrelson's negligence, Loman's injuries, the city ownership of Loman's vehicle, the city's legal obligation under Ordinance No. 18704, as contained in the Administrative Code, for payment of Loman's salary and medical expenses, damages to its property in the amount of $758.91, plus loss of use in the amount of $500, payment of salary to Loman in the amount of $1243.08 and payment of Loman's medical expenses of $405. It contained a prayer for judgment against

defendant-respondent directly for the amount of the alleged property damage and the medical expenses and wages paid to or on behalf of plaintiff.

On October 5, 1967, defendant Harrelson filed a motion to dismiss appellant's amended petition in intervention for failure to state a cause of action, incorporating, by reference, his original motion to dismiss appellant's petition for failure to state a cause of action. In the motion defendant Harrelson alleged that appellant's petition in intervention failed to state a cause of action in that appellant's claim for property damage is not an interest which could be affected by the action and therefore is not a proper subject for intervention; appellant has no enforceable subrogation or assignment of claims for medical expenses and lost wages allegedly paid to or on behalf of plaintiff; and appellant's claim for medical expenses and lost wages amounts to splitting plaintiff's cause of action for personal injuries.

On February 19, 1968, the trial court entered an order sustaining defendant Harrelson's motion to dismiss appellant's second amended petition for damages and dismissing appellant as a party, and this appeal followed.

We are of the opinion that the court did not err in dismissing appellant's petition.

Respondent's original motion to dismiss appellant's "Intervenor's Petition", directed to that portion of the petition for damages for medical expenses and lost wages, was grounded upon the proposition that appellant has no enforceable subrogation or assignment of claims for medical expenses and lost wages paid to or on behalf of plaintiff because such would amount to an assignment of and the splitting of a cause of action for personal injuries.

In the case of Travelers Indemnity Company v. Chumbley, Mo.App., 394 S.W.2d 418, 19 A.L.R.3d 1043, the plaintiff insurance company filed suit against both their insured and the third party tort-feasor for medical payments paid to the insured. It filed suit after the insured and the third party tort-feasor had settled all claims between them. The trial court dismissed the plaintiff's petition for failure to state a claim and plaintiff appealed. The Springfield Court of Appeals in an excellent opinion by Judge Stone sustained the trial court. Paragraph 15 of the insurance policy at issue in that case contained the following language:

"15. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

The court held:

"Plaintiff Travelers relies upon conventional subrogation, i. e., upon subrogation by virtue of contract (citations omitted) more specifically upon hereinbefore-quoted paragraph 15 of the policy 'conditions.' * * * plaintiff's status here is, in legal effect, that of an assignee of a portion of (insureds) cause of action for personal injury." (l.c. 422–423)

" * * * If (as we have determined) (insureds) cause of action for personal injury, *which embraced and included his right to recover his medical expenses*, was not assignable, it necessarily follows that the purported assignment of such right of recovery by paragraph 15 of the policy 'conditions' was of no validity and effect." (l.c. 423) (Emphasis ours.)

The court in the *Travelers* case went on to point out that since the non-assignability of the personal injury action disposed of the appeal, they would not get involved in the field of splitting causes of action. The court noted, in passing, that the case presented a novel and unique situation

where, as in the case at bar, the parties seeking subrogation not only would split the cause of action for personal injuries by severing therefrom the claim for medical expenses, but would also fragment that claim by dividing it between the alleged subrogee and the insured party.

The court based its holding on the question of subrogation of personal injury medical payments on the following public policy reasoning:

" * * * the nurturing of subrogation as to medical payments would give substance to the unwelcome specter of multiple subrogation claims by an automobile insurer *and others* making payments to the same individual on account of bodily injuries sustained in the same accident. And, so it seems to us, multiple subrogation claims inevitably would lead to conflicts and disputes between subrogation claimants, would complicate and make more difficult the negotiation of voluntary settlements with third-party tortfeasors, and would encourage and promote suits and *interpleaders*, all running counter to the policy of the law." (Emphasis ours.)

Thus, although the *Travelers* case involved a suit by the alleged subrogee, an insurance company, against the claimant and the third-party tort feasor *after* they had settled their claims and the case at bar involves a City seeking the same result by intervention, it is clear that the court in the *Travelers* case was not limiting its opinion to insurance companies or to cases where a separate suit is filed by the alleged subrogee (as opposed to intervention.)

In the *Travelers* case, the plaintiff insurance company relied upon conventional subrogation, i.e., upon subrogation by virtue of contract. In the case at bar, appellant is apparently seeking to distinguish the *Travelers* case by asserting that its claim is based rather on equitable principles of unjust enrichment. The same argument

was made by the insurance company in the interpleader action, Forsthove v. Hardware Dealers Mutual ,Fire Insurance Company, Mo.App., 416 S.W.2d 208. There the insurance company asserted that even if its subrogation contract with insured was invalid as an assignment of a death claim, nevertheless it should be entitled to restitution for payments made on equitable principles. The court held:

"We have shown such a subrogation clause is invalid as to assignment of personal injury claims or wrongful death actions. This would be true whether it is a conventional assignment or is founded on principles of equity (citations omitted). Subrogation is an equitable doctrine and is closely akin to, if not a part of, the equitable principle of restitution and unjust enrichment."

Furthermore, no equitable right of subrogation could exist by virtue of the Administrative Code of Kansas City which was in effect at the time of the events alleged in the pleadings. Division 3, Section 302 of the Administrative Code, in effect at that time; did not create a legally enforceable obligation on the part of the City to pay an employee benefits, because it provided as follows:

"Should the head of the department refuse to approve or the personnel committee refuse to approve payments to an employee, in accordance with Sections 296, 297 or 299 of this Code, the decision of such department head or personnel committee shall be subject to review by the City Manager * * * * *The decision of the department head, committee or the City Manager shall not be subject to review by any court.*" (Emphasis ours.)

Thus, the city had created no legally enforceable obligation to pay benefits under the ordinance. The above ordinance merely stated, in effect, that the City will

pay if the City decides to pay. In making such payments the City was merely a volunteer and is not entitled to subrogation or indemnity, legal or equitable. Netherton v. Farmers' Exchange Bank of Gallatin, 288 Mo.App. 296, 63 S.W.2d 156; Cape Girardeau Bell Telephone Co. v. Hamil's Estate, 153 Mo.App. 404, 134 S.W. 1103.

Appellant repeatedly asserts that, through intervention, appellant has saved respondent from "any problem of splitting a cause of action," i.e., the threat of double recovery and the harassment of multiple suits. Curiously, however, in the same paragraphs that these assertions are made, appellant also concedes, for the first time, that it has no separate cause of action against respondent. Therefore, since appellant admits that it has no independent cause of action it is difficult to see how there could be any problem of harassment and double recovery. And, appellant studiously ignores the public policy rationale of the *Travelers* case, *supra*, which made no reference to the threat of double recovery and harassment of multiple suits but was concerned with the fact that multiple subrogation claims would complicate and make more difficult settlement negotiations and would encourage and promote suits and interpleaders.

Respondent advances other reasons showing why the action of the trial court should be sustained. These we need not discuss.

The order of the trial court should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted by the Court and the order of the trial court dismissing appellant's petition is affirmed.

All concur.