SHELBY J. BECA *v.* MAYOR AND
CITY COUNCIL OF BALTIMORE

[No. 30, September Term, 1976.]

*Decided January 10, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*William H. Engelman,* with whom were *Kenneth P. Niman* and *Kaplan, Heyman, Greenberg, Engelman & Belgrad* on the brief, for appellant.

*Harry L. Chase, Assistant City Solicitor,* with whom was *Benjamin L. Brown, City Solicitor,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to consider whether an employee of the Police Department of Baltimore City injured in the line of duty may lawfully be required to reimburse the City, out of the proceeds of a settlement obtained from a third party tort-feasor, for sick leave benefits and medical expenses paid by the Department to the employee.

Shelby Beca, a meter maid, was injured in the course of her employment with the Department on September 29, 1970 due to the negligence of a third party. As a result, she lost 191 days from work and incurred medical expenses in the amount of $1,636.34. In accordance with the Department's personnel policy, she received her full wages for the period of her sick leave, which amounted to $2,958.59, and the Department paid all of her medical expenses. Subsequently, Beca sued the third party tort-feasor and obtained a settlement of $15,000, out of which she paid $5,000 to her attorney.

At the time of Beca's accident, as now, Rule VIII, § 8 of the Rules and Regulations and Manual of Procedure of the Police Department of Baltimore City required members of

the Department injured in the line of duty by the negligence of a third party to reimburse the Department "for expenses advanced by it provided that such reimbursement shall be made out of the proceeds of settlement with the tortfeasor or his insurer." The rule provides that expenses for which the Department must be reimbursed "shall consist of wages, hospital costs, doctors' fees, and any other medical expenses advanced by the Department." The rule amending Rule VIII was promulgated by the Police Commissioner of Baltimore City as General Order 69-13 and was dated September 30, 1969.[1]

Upon Beca's refusal to reimburse the Department for the amount of her sick leave and medical expenses in accordance with the requirements of the rule, the City sued her in the District Court of Maryland. Evidence was adduced at the trial on behalf of the City through a Deputy Commissioner of the Department and two supervisory police officers. It showed that Beca was employed by the Department in 1968; that at that time Rule VIII provided that employees of the Department could file a claim in court for injuries sustained only with the prior consent of the Police Commissioner; that when Rule VIII was amended by General Order 69-13, on September 30, 1969, the Police Commissioner's consent to suit was no longer required, but rather only prior written notification to him was mandated, together with an acknowledgement "by publication of a Personnel Order"; that General Order 69-13 was distributed in accordance with departmental policy to all sworn and civilian personnel, which included all meter maids; that General Order 69-13 was read at roll calls on three consecutive days and posted on bulletin boards throughout the Department; that by letter dated December 28, 1970, Beca requested permission through departmental channels to sue the third party tort-feasor; that her request was acknowledged with specific reference being made to General Order 69-13, and a personnel order was issued dated June 4, 1971, which Beca

---

1. Unlimited sick leave and reimbursement for all medical expenses incurred were then authorized by departmental directive for members of the Department injured in line of duty.

acknowledged by her signature; and that the Department notified Beca's lawyer, by letters dated July 27 and September 9, 1971, in response to inquiries received from him, of the reimbursement requirements of General Order 69-13.

There was evidence that one of Beca's supervisors talked with her about General Order 69-13 in connection with the filing of her claim against the third party tort-feasor in this case. There was also evidence that Beca had been involved in other accidents and was familiar with departmental procedures. There was no evidence, however, that Beca ever actually received a copy of General Order 69-13, nor that she was present at roll calls when the order was read, nor that she read it on the bulletin board.

Beca did not testify at the trial and put on no evidence. She argued that absent a statute the City had no subrogation right to all or any part of the settlement she obtained. She also argued that the rule did not create any contractual right permitting the City to be reimbursed since it was unilaterally adopted by the Police Commissioner and there was no evidence that she ever assented to it.

The District Court entered judgment for Beca. The record does not indicate that the court made any findings of fact and the basis for its decision cannot be ascertained from the record.

The City's appeal to the Circuit Court for Baltimore County was taken on the record made in the District Court, and the judgment was reversed. The court there held that the issue was whether Beca assented to the provisions of General Order 69-13. It held that she had knowledge of the order and was bound thereby as a part of her employment contract.

The authority of the Police Commissioner of Baltimore City to promulgate rules and regulations binding upon members of the Department emanates from Chapter 203 of the Laws of Maryland of 1966, now codified as §§ 16-1 through 16-40 of the Code of Public Local Laws of Baltimore City (Everstine 1969). Under § 16-2 the Department is constituted as an agency of the State, although under § 16-8

its operations are funded by the City. The Police Commissioner of Baltimore City is designated as the chief executive officer of the Department by § 16-4 and its "affairs and operations" are placed under his supervision and direction. Section 16-7 provides, with exceptions not here pertinent, that the Commissioner shall "be vested with all the powers, rights and privileges attending the responsibility of management, and [he] may exercise the same, where appropriate, by rule, regulation, order, or other departmental directive which shall be binding on all members of the Department when duly promulgated." The authority vested in the Commissioner under § 16-7 includes the power to regulate "attendance, conduct, . . . and procedure for all members of the Department and to make all other rules, regulations and orders as may be necessary for the good government of the Department and of its members." It also includes the power to "establish and modify systems . . . [for] the administration, management and operations of the Department." The Commissioner is empowered under § 16-7 (14) "To suspend, amend, rescind, abrogate or cancel any rule, regulation, order or other departmental directive . . . and to adopt all such other reasonsonable rules, regulations and orders as he may deem necessary to enable the Department effectively to discharge the duties imposed upon it by this subtitle."

Beca argues before us that the circuit court erred in finding from the evidence that she had knowledge of General Order 69-13 and was bound by its provisions. Of course, on an appeal to the circuit court from the District Court, the appellate court must accept and be bound by findings of fact of the lower court unless clearly erroneous; in other words, the appellate court should not substitute its judgment for that of the trial court on the facts, but should only determine whether those findings were clearly erroneous in light of the total evidence. *Ryan v. Thurston,* 276 Md. 390, 347 A. 2d 834 (1975). While the District Court made no findings of fact with respect to Beca's knowledge of General Order 69-13, in the view we take of this case, its failure to do so is without significant consequence. On the record before

us, we think the Department had a contractual right to reimbursement as a matter of law, whether or not Beca had actual knowledge of the order.

As heretofore indicated, the legislature has invested the Police Commissioner with broad powers to manage the Department, and has provided by § 16-7 that rules or orders lawfully promulgated by him "shall be binding on all members of the Department." That the exercise of this authority does not require the assent of members of the Department is, of course, entirely clear. That the promulgation of General Order 69-13 was within the power vested in the Commissioner under the statute is equally clear. It is also clear that, contrary to Beca's contention, the payment to her of sick leave and medical expense benefits was not a matter of grace or departmental largesse; payment was made in compliance with binding departmental directives enacted pursuant to the Commissmissioner's statutory authority, which remained effective unless and until abrogated under § 16-7 (14). It is a familiar principle of law that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms. *Holmes v. Sharretts,* 228 Md. 358, 180 A. 2d 302 (1962); *Whitworth, Adm'r v. Department,* 222 Md. 98, 158 A. 2d 765 (1960); *Griffith v. Scheungrab,* 219 Md. 27, 146 A. 2d 864 (1958). *See also Dahl v. Brunswick Corp.,* 277 Md. 471, 356 A. 2d 221 (1976). Where, as here, the statute bound all members of the Department to comply with lawful rules and orders of the Commissioner, and General Order 69-13 was duly promulgated in pursuance of that authority, compliance therewith is a condition implied in the contract of employment. *See Denice v. Spotswood I. Quinby, Inc.,* 248 Md. 428, 236 A. 2d 4 (1968).

Beca claims that although the circuit court did not actually use the word "subrogation" in its opinion reversing the District Court's judgment, it necessarily held, erroneously, that the City was subrogated in some fashion to a portion of her recovery against the tort-feasor because absent such a theory there would be no basis for permitting the recovery. The suit in this case did not purport to invoke

the equitable doctrine of subrogation; it was a contract action based upon the common counts and a special count which alleged that by failing to make reimbursement of the amount of sick leave and medical benefits paid to her Beca breached her "contractual obligation." Beca has never contended that the City was not a proper party plaintiff in the District Court, and throughout these proceedings she has referred to and treated the City and the Department interchangeably as if they were one entity.[2] She simply says, in effect, that she has no obligation to make reimbursement under General Order 69-13 to anyone. She relies primarily on a line of authorities from other jurisdictions, holding, in various circumstances, that a municipal employer is not entitled to recover as a subrogee to the rights of an employee injured by a third party tort-feasor for sick leave and medical expenses paid by the employer to the employee during disability.[3] We do not think that these authorities are apposite. This is not a case where the employer, having paid benefits to an injured employee, claims a right to be subrogated to part of the employee's right of action against the tort-feasor, or seeks to intervene in the injured employee's suit against the tort-feasor. Rather, it is a suit based upon the employer's direct right under a contract of employment to compel compliance with the terms of the contract. Here, unlike *City of Richmond v. Hanes*, 203 Va. 102, 122 S.E.2d 895 (1961), upon which Beca places principal reliance, there was statutory authority underpinning a lawfully promulgated order requiring reimbursement by the employee from the proceeds of the settlement and Beca was bound by it, without regard to her actual knowledge of its terms.[4]

---

**2.** The rule in nearly all jurisdictions is that a third person may, in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. *See* 17 Am. Jur. 2d Contracts § 302 (1964); Hamilton v. Board of Education, 233 Md. 196, 195 A. 2d 710 (1963); Maryland District Rule 203.

**3.** See Annot., 70 A.L.R.2d 475 (1958); Loman v. Harrelson, 437 S.W.2d 123 (Mo. App. 1968).

**4.** On the record in this case, we think a factual finding that Beca did not have knowledge of General Order 69-13 would have been clearly erroneous.

Finally, we find no merit in Beca's contention that if General Order 69-13 did create a contract, it was unenforceable as an assignment of a cause of action prohibited by the common law. Plainly, there was no assignment of a cause of action; the obligation to reimburse was rooted in the employment contract and the employer's action was entirely lawful.[5]

*Judgment affirmed; costs to be paid by the appellant.*

5. Members of the Department injured in line of duty were brought within the coverage of the Workmen's Compensation Act by Chap. 119 of the Laws of Maryland of 1971.